**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

CARLOS ANDERSON,

*Plaintiff*,

v.

BRADLEY SMOKE, *in his individual capacity*; PRINCE ETHERIDGE, *in his individual capacity*; PAMELA BUTLER, *in her individual capacity*,

*Defendants*.

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1. Mr. Carlos Anderson (hereinafter "Mr. Anderson" or "Plaintiff") exercised his constitutionally-protected right and spoke to a reporter. He answered questions about what life was like being incarcerated in the Alabama Department of Corrections ("ADOC") and working at the Ju-Young car parts plant, part of the Hyundai supply chain. Mr. Anderson exercised his most basic First Amendment right: speaking to the media about his reality. When Defendants, Officers Bradley Smoke, Prince Etheridge, and Pamela Butler (collectively, "Defendants"), who are ADOC employees, learned of this protected speech, they retaliated against him for exercising that right.

2. Mr. Anderson is a resident of Montgomery, Alabama, who was previously incarcerated in ADOC. Mr. Anderson was released from ADOC custody in July 2025, and came home on parole in October 2025. Defendants violated Mr. Anderson's constitutional rights during the time of Mr. Anderson's incarceration.

3. In 2024, while incarcerated at Frank Lee Community-Based Facility/Community Work Center (hereafter "Frank Lee") in Deatsville, Alabama, Mr. Anderson engaged in conduct protected under the First Amendment when he spoke to a reporter about his conditions of confinement and experience as an incarcerated worker in ADOC.

4. Following the publication of a *New York Times* article quoting Mr. Anderson, Defendants issued, and approved Mr. Anderson for a behavior citation, imposed sanctions and punishment, mandated extra labor, and spread malicious rumors about Mr. Anderson—jeopardizing his safety—in retaliation for Mr. Anderson's exercise of protected speech.

5. Mr. Anderson suffered emotional distress, a violation of his constitutional right to free speech, and loss of wages because of Defendants' retaliatory actions, and was ultimately transferred to a more restrictive and dangerous ADOC facility because of threats to his safety caused by Defendants' conduct.

6. Mr. Anderson brings this action under the First Amendment of the United States Constitution and 42 U.S.C. § 1983 to seek redress for Defendants' unlawful retaliation against him.

7. Mr. Anderson seeks compensatory, special, and punitive damages, and an award of attorney's fees and costs, to remedy Defendants' violation of his First Amendment rights.

## JURISDICTION & VENUE

8. This action arises under 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), which confer original jurisdiction to federal district courts in suits seeking to redress the deprivation of rights secured by the Constitution of the United States.

9. This Court has personal jurisdiction over each and every Defendant because they are residents of Alabama who were employed in Alabama and acting under color of state law during all relevant times.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Anderson's claims occurred in this District.

## PARTIES

11. Plaintiff Carlos Anderson is a resident of Montgomery, Alabama. Mr. Anderson was incarcerated by ADOC from August 14, 2009, until July 2025. He was released from the Parole Board's Perry County PREP facility on October 3,

2025. At the time of the events described herein, Mr. Anderson was incarcerated at Frank Lee Community-Based Facility/Community Work Center in Deatsville, Alabama, and was employed at Ju-Young manufacturing plant as part of a work release labor program. Ju-Young manufactures auto parts for the Hyundai supply chain.

12. Defendant Pamela Butler was the Captain at Frank Lee. At all relevant times, Defendant Butler was responsible for the day-to-day operations of the prison, the safety of all incarcerated people, and the training and supervision of all subordinate employees. Frank Lee did not have an acting warden at the time Mr. Anderson was incarcerated there, so Defendant Butler was effectively in charge of the facility. She is now the Warden at Frank Lee. As such, Defendant Butler was the supervising authority and commanding officer of Defendant Smoke and Defendant Etheridge, and was responsible for the training and conduct of each said Defendant. Defendant Butler was also responsible for enforcing the regulations of the ADOC and for ensuring that ADOC employees under her supervision and command at Frank Lee obeyed the laws of the State of Alabama and of the United States. Defendant Butler is sued in her individual capacity.

13. Defendant Etheridge is a Sergeant at Frank Lee. At all relevant times, Defendant Etheridge was responsible for the safety of all incarcerated people at Frank Lee, supervising the security activities at Frank Lee, and supervising all

subordinate employees. Defendant Etheridge was also responsible for enforcing the regulations of the ADOC and for ensuring that ADOC employees under his supervision and command at Frank Lee obeyed the laws of the State of Alabama and of the United States. Defendant Etheridge is sued in his individual capacity.

14. Defendant Bradley Smoke is a Lieutenant at Frank Lee. At all relevant times, Defendant Smoke was responsible for the safety of all incarcerated people at Frank Lee, supervising the security activities at Frank Lee, and supervising all subordinate employees. Defendant Smoke is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### A. Mr. Anderson's participation in ADOC's work release program and his employment at Ju-Young

15. The ADOC contracts with private businesses to employ incarcerated workers as part of a work release day program.

16. At many work release jobs, incarcerated workers are required to communicate with non-incarcerated people in the performance of their jobs, including coworkers, supervisors, outside inspectors, and customers.

17. Mr. Anderson was incarcerated at the Frank Lee for approximately two years and was at the Minimum-Out custody level, meaning he was deemed suitable by ADOC for off-site work details without the direct supervision of ADOC staff.

18. Mr. Anderson participated in the work release day program and was sent to work at the Ju-Young plant, a Hyundai parts manufacturing plant in Montgomery, Alabama.

19. It was not unusual for individuals from outside entities to visit the Ju-Young plant to speak to workers at the plant, including incarcerated workers, about their work conditions.

20. Ju-Young supervisors never dissuaded incarcerated workers from speaking to visitors while on break and even encouraged incarcerated workers to do so.

21. Mr. Anderson was never told by his employers that he could not speak to a reporter or any other visitor who came to the jobsite.

22. Similarly, ADOC did not prohibit incarcerated workers from speaking to non-incarcerated people who are present at their workplace. In fact, incarcerated and non-incarcerated staff worked and conversed alongside each other every day at Ju-Young.

23. Mr. Anderson's job assignment at Ju-Young ended for unrelated reasons in or around early summer 2024, and in November 2024, Mr. Anderson was awaiting another job assignment.

**B. Mr. Anderson's exercise of his First Amendment right of freedom of speech**

24. In the spring of 2024, Talmon Joseph Smith, a *New York Times* reporter, interviewed approximately one dozen incarcerated workers at the Ju-Young manufacturing plant, including Mr. Anderson.

25. Mr. Anderson and other incarcerated workers spoke to the *New York Times* reporter about their work environment at Ju-Young and their conditions of confinement in ADOC.

26. Later that year, on October 26, 2024, the *New York Times* published an article titled "Inmate Labor Tests the Limits on 'Involuntary Servitude'" about work release programs for incarcerated people in Alabama.[1] The article named Mr. Anderson and attributed quotes describing the coercive realities of incarcerated labor and conditions of confinement to Mr. Anderson.

27. Mr. Anderson's speech to the *New York Times* was disfavored by Defendants as it specifically referenced that ADOC's work release program was coercive, that officials use their disciplinary processes to force incarcerated people

[1] Talmon Joseph Smith, *Inmate Labor Tests the Limits on "Involuntary Servitude,"* New York Times (Oct. 26, 2024), https://www nytimes.com/2024/10/26/business/economy/prison-labor-alabama-hyundai html [https://perma.cc/632Q-SPSA].

to work, and if you refuse to work ADOC staff will discipline a person in retaliation:

> 10/27/26, 6:40 PM Alabama Prison Labor Program Faces Legal Challenges - The New York Times
>
> Under Alabama prison rules, there are thin lines between work incentives, forced labor and "involuntary servitude" — which reforms to the Alabama Constitution in 2022 banned. From the viewpoint of Mr. Anderson and more than a dozen other Alabama inmates interviewed by The New York Times, the ultimate message, in practice, is straightforward: Do this, or else.
>
> "You have no choice," said Mr. Anderson, 43, who has served 15 years of a 20-year felony sentence for a marijuana trafficking conviction in 2009, and has been contracted out to Ju-Young for about a year.
>
> "If you don't," he added, "they're going to send you on back to the camp and you get rolled up with a disciplinary charge" — like denial of parole, having "good time" revoked, which prolongs incarceration, or being made to work without pay at prison facilities.
>
> The men hanging out with Mr. Anderson in the parking lot — who live with him up the road at a low-security corrections facility for work-release-eligible inmates — nodded in agreement. Most declined to speak on the record out of fear of retaliation.

### C. Defendants' retaliation against Mr. Anderson for speaking to the press about conditions at Ju-Young and in ADOC

28. After the publication of the *New York Times* article, Mr. Anderson faced four separate adverse acts by Defendants in retaliation for his constitutionally protected speech.

29. On or around November 3, 2024, he was called to the shift office and Defendant Smoke asked if he spoke to the New York Times, and showed Mr. Anderson the *New York Times* article on a computer.

30. On November 4, 2024, Mr. Anderson was again called into the shift office by Defendant Smoke.

31. This time, Defendant Smoke, who served as the Job Placement Officer at Frank Lee, told Mr. Anderson that he had "messed up" by speaking to the *New York Times*. Defendant Smoke then gave Mr. Anderson a citation for speaking to the *New York Times*.

32. The very retaliation that Mr. Anderson stated occurs in ADOC, for those who refuse to work, specifically occurred when Defendant Smoke wrote him the retaliatory citation for telling the *New York Times* about the coercive nature of the ADOC work release program.

33. The citation indicated that on October 31, 2024, at the Ju-Young plant, Defendant Smoke spoke to a supervisor who told Lt. Smoke that Mr. Anderson had been interviewed by the *New York Times*:



Alabama Department of Corrections
**BEHAVIOR CITATION**

403-? (1-7)

**Incident Report Number:** FLCBF-24-00968

1. **Inmate:** ANDERSON, CARLOS JERMAINE  **Custody:** MIN-COMM  **AIS:** 00267297
2. **Institution:** FRANK LEE WORK RELEASE  **Disc #:** FLCBF-24-00968-1
3. **Bed Nbr:** 81-638  **Job Assgnmnt:** B-Dorm Cleaner
4. **The above inmate is being charged by:** SMOKE, BRADLEY F
5. **With a violation of the following Rule(s):**
   309 - Violation of institutional rules
   On 10-31-24, at approximately 10:00am, Correctional Lieutenant Bradley Smoke conducted a meeting with Mrs. Angela Kwak (Ju-Young Supervisor) at Ju-Young Plant #2. During the meeting, Mrs. Kwak stated that inmate Carlos Anderson B/267297 conducted an interview with The New York Times Newspaper. Inmate Anderson did not have permission to conduct the interview. Inmate Anderson actions violated RV#309-Violation of institutional rules.
6. **From Administrative Regulation #403, which occured on or about:**
   Oct 31 2024 10:00AM at External Site Workplace

SMOKE, BRADLEY F – 11/04/2024
Citing Employee Name and Date

34. In the citation, Defendant Smoke claimed that Mr. Anderson "did not have permission" to speak to the media and that Mr. Anderson's conduct was a "Violation of Institutional rules."

35. Defendant Smoke did not indicate which specific facility rule Mr. Anderson violated, instead citing a catchall rule–ADOC Rule 309–which is defined in the ADOC regulations as "failure to comply with facility standard operating procedures."[2]

36. After issuing the citation, Defendant Smoke told Mr. Anderson that he would not make parole because of the citation. Defendant Smoke mentioned that he knows someone at the parole board and he would ensure he did not get parole. Mr. Anderson understood this to mean that Defendant Smoke would take action to harm Mr. Anderson's chances of being granted parole because of Mr. Anderson's decision to interview with the *New York Times*.

37. Defendants Etheridge and Butler authorized and approved the November 4, 2024 behavior citation, which was retaliation for Mr. Anderson's speech with the *New York Times*. Defendant Etheridge first signed the retaliatory citation on November 4, 2024, in his capacity as an ADOC supervisor, according to

---

[2] *See* ADOC Administrative Regulation ("AR") 403, *Procedure for Inmate Rule Violations* at 31 (Annex C, Rule Violations Definitions and Examples), https://www.doc.alabama.gov/wp-content/uploads/2026/02/AR410.pdf.

ADOC AR 403, and then Defendant Butler, who was the Captain and acting facility warden at the time, approved the citation on November 8, 2024.

38. As a result of the citation, Mr. Anderson received thirty days of extra duty (involuntary unpaid labor) and lost thirty days of phone, visitation, and canteen privileges, beginning on or around November 8, 2024.

39. Mr. Anderson was forced to work on cleanup duty, cleaning the units and grounds at Frank Lee for his thirty days of extra duty.

40. Had Mr. Anderson refused to work extra duty, he would have faced further disciplinary action, including more severe disciplinaries that would have gone on his record and been seen by the parole board at his June 2025 parole hearing.

41. In or around the summer of 2024, Mr. Anderson's job assignment at Ju-Young ended. In November 2024, Mr. Anderson was unemployed and awaiting another employment assignment when Defendants issued him the retaliatory behavior citation.

42. While serving his sanctions and restrictions, he was unable to receive any other work release job. He was also unable to see his family on visits, use the telephone to stay in touch with loved ones, or take his weekend "passes" home to stay overnight with family. Prior to receiving the citation, Mr. Anderson would regularly use the "passes" available to people in work release and would go to family members' homes in Montgomery for hours or even overnight visits.

43. In the following weeks, Defendant Smoke spread malicious and harmful rumors about Mr. Anderson to chill Mr. Anderson's protected speech.

44. Defendant Smoke told incarcerated people at Frank Lee that Mr. Anderson's interview with the *New York Times* reporter prompted Ju-Young to terminate their contract with ADOC and caused other incarcerated workers to lose their jobs.

45. These dangerous rumors produced anger and frustration towards Mr. Anderson from other incarcerated people at Frank Lee.

46. Mr. Anderson faced persistent threats and harassment from other incarcerated individuals who blamed Mr. Anderson for the loss of their jobs.

47. Mr. Anderson suffered from significant stress and anxiety as he feared for his physical safety and well-being as a result of the rumors spread by Defendant Smoke.

**D. Defendants punished Mr. Anderson despite being on notice that his conduct was protected and permissible under ADOC policy**

48. Mr. Anderson was exercising his First Amendment right of freedom of speech when he spoke to the *New York Times* reporter.

49. Defendants issued and approved a disciplinary citation against Mr. Anderson under the catchall ADOC rule – "309 - Violation of Institutional Rules" – to retaliate against him for speaking out publicly about his conditions of confinement and incarcerated labor in ADOC.

50. ADOC policies, rules, regulations, and standard operating procedures do not authorize punishment against incarcerated people for speaking to the media, or for communicating with non-incarcerated persons while at a work release job site.

51. Defendants were therefore on notice that ADOC policy does not permit punishment for incarcerated people, or prohibit incarcerated people from speaking with reporters at their work release job sites.

52. The conduct described in the behavior citation issued to Mr. Anderson – "conduct[ing] an interview with The New York Times Newspaper" – does not constitute a violation of ADOC's rules or regulations, or of any institutional rule or standard operating procedure at Frank Lee of which Mr. Anderson was made aware.

53. Prior to receiving the citation, Mr. Anderson was never informed by any ADOC employee or representative that he was prohibited from speaking to the media while at his work release jobsite.

54. Mr. Anderson does not recall that the "Inmate Handbook" he received after arriving at Frank Lee said anything about incarcerated people being prohibited from speaking to the media. Nor did Mr. Anderson ever see such a rule or requirement posted anywhere within the facility or at his jobsite.

55. Since Mr. Anderson was given a behavior citation rather than a disciplinary report, he had no due process protections to challenge the citation through a disciplinary hearing.[3]

56. On or about November 9, 2024, Mr. Anderson filed a grievance against Defendant Smoke challenging the retaliatory citation and did not receive a response.

57. While Mr. Anderson was incarcerated at Frank Lee, there was a culture of grievances routinely being ignored by staff. For several months in 2024, Frank Lee staff taped over the grievance box located outside the shift office and told incarcerated people they were not accepting grievances.

58. On November 21, 2024, attorneys with the Center for Constitutional Rights wrote a letter to ADOC general counsel on behalf of Mr. Anderson raising concerns about the violation of Mr. Anderson's First Amendment rights and informing ADOC of his safety concerns at Frank Lee as a result of the rumors Defendant Smoke had spread about him. The letter requested ADOC to: (1) expunge the November 4 behavior citation and accompanying sanctions from Mr. Anderson's file; (2) not require Mr. Anderson to complete the sanctions imposed as a result of the behavior citation; and (3) transfer Mr. Anderson to a different work release facility away from Defendant Smoke to ensure Mr. Anderson's safety.

---

[3] *See supra* note 2, ADOC AR 403, § V.

59. Mr. Anderson filed a second grievance against Defendant Smoke on December 11, 2024. The grievance challenged the retaliatory citation and indicated to his knowledge he was the only incarcerated person at Frank Lee written up for speaking to the *New York Times*, even though he was not the only person who spoke to the reporter. He did not receive a response to this second grievance.

60. Mr. Anderson was transferred to Kilby Correctional Facility on December 12, 2024.

61. Kilby is a maximum security prison. The conditions at ADOC major facilities, including Kilby, are significantly more restrictive than at work-release and community-based facilities like Frank Lee. Major facilities are also more dangerous than work release facilities, with higher rates of violence and a well-documented pattern of unconstitutional conditions.

62. At Kilby, Mr. Anderson was subjected to a 90-day minimum hold because of the behavior citation he received from Defendants at Frank Lee. As a result, even though he was classified at minimum custody, he could not be transferred to another minimum custody facility or work release center for 90 days.

63. After approximately three months, Mr. Anderson was transferred to Elba Community Based Facility/Community Work Center.

64. Mr. Anderson was granted parole in June 2025. He was sent to the Perry County PREP Center in or around July 2025, and he returned home to Montgomery, Alabama on October 3, 2025.

## CLAIM FOR RELIEF

### First Cause of Action
### 42 U.S.C. § 1983: Retaliation in Violation of the First Amendment to the United States Constitution

65. Mr. Anderson incorporates and re-alleges herein the foregoing paragraphs.

66. At all relevant times, Defendants' conduct violated the constitutional rights guaranteed to Mr. Anderson by the First Amendment to the United States Constitution.

67. While acting under the color of law, Defendants violated Mr. Anderson's constitutional rights by punishing Mr. Anderson for speaking to the media.

68. Mr. Anderson was engaged in speech protected by the First Amendment when he spoke to the *New York Times* reporter about his experience as an incarcerated laborer and his conditions of confinement in ADOC.

69. Mr. Anderson faced four separate adverse acts by Defendants in retaliation for exercising his constitutionally-protected right of freedom of speech: (1) Defendants issued and approved a behavior citation to Mr. Anderson for

speaking to a reporter for the *New York Times*; (2) Defendants imposed a sanction of thirty days of extra unpaid work duty on Mr. Anderson in connection with the citation; (3) Defendants deprived Mr. Anderson of phone access, visitation, and canteen privileges for thirty days in connection with the citation; and (4) Defendant Smoke spread rumors that threatened Mr. Anderson's safety and necessitated a transfer to a more restrictive and dangerous facility, where he was held for 90 days due to the citation.

70. Mr. Anderson suffered emotional distress from the citation and resulting sanctions, and due to Defendant Smoke's malicious spreading of false rumors that blamed Mr. Anderson for the termination of the Ju-Young contract and resulted in his transfer to and prolonged wait at Kilby Correctional Facility.

71. As indicated in the citation issued by Defendant Smoke, and signed off on and approved by Defendants Etheridge and Butler, these retaliatory actions were directly and explicitly motivated by Mr. Anderson's protected speech.

72. As a result of Defendants' conduct, Mr. Anderson suffered damages, including, but not limited to, lost wages, mental anguish, embarrassment, humiliation, and severe emotional distress.

## PRAYER FOR RELIEF

Plaintiff Carlos Anderson demands a trial by jury and respectfully prays that this Court enter judgment in his favor and against Defendants, providing the following relief:

A. Award Plaintiff compensatory and special damages against each Defendant named in his or her individual capacity, in an amount to be determined at trial;

B. Award Plaintiff punitive damages against each Defendant named in his or her individual capacity, in an amount to be determined at trial;

C. Award Plaintiff the costs of this suit and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

D. Award such other and further relief as the Court deems just and proper.

Dated: November 3, 2026

Respectfully submitted,

*/s/ Emily Early*

Emily Early
Alabama State Bar No. 8536-B18H
C.J. Sandley*
Alabama State Bar No. 5317-S48R
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. Box 486
Birmingham, AL 35201

212-614-6464
eearly@ccrjustice.org
csandley@ccrjustice.org

D. Korbin Felder**
Mississippi State Bar No. 106643
Cheyenne Blackburn**
Louisiana State Bar No. 42101
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. Box 12046
Jackson, MS 39236
601-228-6101
kfelder@ccrjustice.org
cblackburn@ccrjustice.org

**Admission renewal pending*
***Application for admission* pro hac vice *forthcoming*

*Attorneys for Plaintiff*